## In re DAVIS' ESTATE.

[Submitted February 8, 1895.  Decided February 18, 1895.]

Wills—*Contest against probate of will—Abuse of discretion in refusing to open default.*—In the case at bar two several contests were brought against the probate of a will by different heirs at law of the decedent, but the grounds of objection being the same in substance in both contests, the two sets of contestants were represented by the same counsel in Montana.  A trial of one of these contests was had, which lasted over a month, and the jury, being unable to agree, were discharged.  Counsel then stipulated that upon a day certain, to be named by the court, this same contest should be tried again, and that no continuance thereof should be had or asked by either party, unless for causes that might arise after the date of the stipulation.  Some five or six weeks prior to the day fixed for trial the Montana counsel withdrew from further participation in the case on behalf of the second case of contestants, giving as a reason therefor that their interests had become adverse to the interests of the other contestants.  The New York counsel of the second set of contestants were notified of such withdrawal, and advised of the necessity of having some one on hand at the approaching trial, and, after several futile attempts, they at last succeeded in retaining a Montana attorney just one week before the day set for the trial of the first contest.  But the latter attorney was then trying another case, and it was impossible for him to familiarize himself with his clients' claims, and the testimony necessary to support them.  When the hours of trial of the first contest arrived, a stipulation for its continuance was filed, and the agreement made to separate it "from any other contests of any other parties against the probate of said will."  This stipulation summarily disposed of the trial of the first contest on that day, and the second contest was then called for trial, but the Montana counsel could do nothing, except beg a continuance, which he did on the ground that he relied on the other contest being first tried; that his clients were in Massachusetts and New York; that their only Montana counsel familiar with their rights had withdrawn some weeks previously; that their New York counsel were not present, and that he had no testimony on hand, and knew not where to get it, or who were his witnesses.  The court denied the motion for a continuance, and the proponents of the will pressed for a dismissal of the contest.  The Montana attorney asked leave to dismiss "without prejudice," but the proponents objected, and asked a general dismissal, whereupon the former, acting presumably in his belief in the best interests of his clients, withdrew from the case, and it was at once dismissed on proponents' motion.  *Held*, That although the court may not have erred in refusing a continuance, and properly declined to permit a dismissal "without prejudice," and though the contestants and their New York counsel may have been negligent in permitting the Montana attorney to be placed in the position he was, yet, in view of the fact that when these contestants, by their counsel, went into court, the first contest stood for trial ahead of theirs, and that when it was continued, and the second contest was peremptorily called, they were surprised, their negligence in not being ready to proceed, considering all the facts and circumstances, was excusable, and, under section 116 of the Code of Civil Procedure, they were entitled to be relieved from the default, and that the discretion of the court in refusing such relief was so unwisely exercised that, in furtherance of justice, a reversal would be ordered.

*Appeal from Second Judicial District, Silver Bow County.*

WILL CONTEST. Dismissal as for a default. The contestants' motion to open the default was denied by McHATTON, J. Reversed.

Statement of the case by the justice delivering the opinion:

A. J. Davis died at Butte, Montana, March 11, 1890. His estate was of the estimated value of about four millions of dollars. He left certain heirs at law, amongst whom was Sarah Maria Cummings, a sister, Henry Root and Ellen S. Connel, children of a deceased sister, Harriet R. Sheffield and Henry A. Davis, children of a deceased brother. Just after the death of the decedent, upon the belief that he had died intestate, several parties in interest applied for letters of administration. July 24, 1890, while these applications were pending, John A. Davis filed an instrument purporting to be the will of the decedent and praying that it be admitted to probate. August 9, 1890, Henry A. Root and Maria Cummings and Harriet R. Sheffield and Henry A. Davis filed objections to the admission of the said alleged will to probate. The main grounds of these objections were that the document filed was not the last will and testament of the said A. J. Davis, deceased; that the said A. J. Davis, deceased, did not declare the same to be his last will and testament; that the witnesses to said alleged will did not sign the same at the request of the said A. J. Davis, deceased; and that the said instrument was fraudulent and spurious, and that the signatures thereon were forged. Upon August 12, 1890, a special administrator was appointed, who is yet serving. On the 19th of August, 1890, John A. Davis, proponent of the will, demurred to the objections filed by Root and Cummings and to the objections of Sheffield and Davis. Upon August 23, 1890, these demurrers were argued, and on September 2d sustained. Root and Cummings, as contestants, filed amended objections to the probate of said alleged will, and on the 3d of October the proponent filed his answer. A trial was subsequently had in July, 1891, upon the contest of Root and Cummings. This trial lasted over a month, and, on September 9th, the jury, being unable to agree, were discharged. January 24, 1893, the proponent of the alleged will, John A. Davis, died intestate. John E. Davis, his son, was duly appointed

administrator of his estate.   Upon April 1, 1893, said John E.
Davis secured an order reviving the Root and Cummings con-
test.   The Sheffield and Davis contest was still pending.   The
proponent, having only demurred to certain of the objections of
the said Sheffield and Davis, ought to have answered to other
objections, but did not.   Nothing was done in the Sheffield-
Davis contest until May 13, 1893, upon which date John E.
Davis, as administrator of his father's estate, filed an answer
to the first four objections of the said Sheffield and Davis, and
upon said thirteenth day of May, 1893, the contest was set
down for hearing upon July 24th.   The contest of Root and
Cummings preceded the contest of Sheffield and Davis on
the docket, and in the Root and Cummings contest counsel
stipulated, upon the twenty-ninth day of April, 1893, that the
said Root and Cummings contest should be continued until
July 17, 1893, or until a day certain to be fixed by the court,
and that upon such day the said contest should be tried and no
continuance thereof should be had or asked by either party,
unless for causes that might arise after the date of the stipu-
lation.   Sheffield and Davis had been represented by E. W.
Toole, Esq., and John B. Clayberg, Esq., in Montana up to
some time in June, 1893, at which time Mr. Toole and Mr.
Clayberg withdrew from the further participation in the case.
The New York attorneys of Sheffield and Davis made some
effort to have Mr. Toole remain as their counsel, but these
efforts were without success.   A telegram was then sent by
Mr. Keogh, one of the New York lawyers of the appellants,
to Judge McHatton, presiding judge of the court in which the
contests were pending, asking him to recommend some counsel to
them.   The judge, upon receipt of the telegram of Mr. Keogh,
recommended Mr. John W. Cotter of Butte.   Mr. Cotter was
employed on July 17th.   At the time of his employment he
was engaged in the trial of an important mining suit, which
was concluded on the evening of July 23, 1893, or the day
before the contests of Root and Cummings and these appellants
were set for trial.   On July 19th Mr. Cotter filed his written
demand for a jury trial in the matter of the contest of Sheffield
and Davis.   On July 24th the contestants Root and Cum-
mings, by stipulation made with the proponent, stipulated that

the Root and Cummings contest should be tried jointly and together, but separate and apart and distinct from any other contests of any other parties against the probate of said will, and, further, that the trial of the Root and Cummings contest, set for trial on July 24th, should be continued and should not be set for trial until after September 1, 1893, and then only upon order of the court made upon application of one or more of the said parties to contest, notice of which application should be given by the parties making the same to the other parties to said contest. This stipulation was dated and filed upon the dates set for the trial of the contest.

Thereafter Sheffield and Davis, contestants, filed their motion for a continuance, basing it upon the affidavit of Mr. Cotter, which is substantially as follows:

That he was retained by the contestants on July 17th; that he was then engaged in the trial of the case of *Fitzgerald* v. *Clark* in the district court of Silver Bow county; that he had no time to prepare for the contest, owing to the fact of his engagement in said case, the trial of which terminated July 23d at 5:30 o'clock P. M; that when he agreed to represent the contestants he was led to believe from the record that the contests would be all tried together, otherwise he would not have agreed to represent them at all at that time; "that according to the terms of the stipulation filed in the said cause, and dated April 29, 1893, there was to be no further continuance of this cause, or of the trial of this cause, as to the contestant and plaintiff Henry A. Root, which said stipulation was signed by all of the attorneys or most of the attorneys representing proponent and said contestant at that time; that the stipulation for a continuance filed in this court on the twenty-fourth day of July, 1893, on the part of said Henry A. Root, was a matter of surprise to me, and that I was taken by surprise upon the filing of the said stipulation, and did not anticipate any continuance as to any of the contestants, but thought that said matter would be tried; that the contests of all of the said parties involve practically the same issues as appears by the records of said cause, and that all of the said contests can be tried together, and affiant states that I can see no good reason why the hearing thereof should be separated and the court compelled to devote

double the amount of time, at least, to the disposition of the matters and issues raised by the contests of the different parties to the above proceeding.

"That owing to the fact of the said contestants and plaintiffs Harriet R. Sheffield and Henry A. Davis having relied upon the trial of the contest of Henry A. Root and of all the contests in the above proceeding on the same date, and not anticipating separate trials of said contests, and, no demand having been made, that affiant is aware of, until July 24, 1893, for a separate trial of the said contests, affiant is not at present prepared to proceed with the trial of said cause for the said parties.

"Affiant further states that since the date of my retention as attorney in said cause I have not had an opportunity to discover the names and whereabouts of the witnesses necessary to present the issues in this cause; that I have devoted a greater portion of my spare time to looking up the said matters, and have been unable to find the names or residences of the witnesses, for the purpose of subpœnaing them or taking their depositions, and that I would be unable to present this case in a manner that would do justice to my clients at this time; that it will require some considerable time to prepare the said cause for trial, and that if a continuance is allowed herein for a reasonable time, that I believe that I will be in a position to try said cause in a manner that will do justice to myself and my clients, but that I am not able to do so at this time, owing to the above facts and circumstances; that owing to the fact that the persons I represent reside in the states of New York and Massachusetts, and that their attorney, Martin J. Keogh, resides in the city of New York, I have not had time to consult with him in this cause, for the purpose of ascertaining the whereabouts of necessary witnesses upon the trial of this cause, and all of my consultations and correspondence have to be carried on by mail or telegraph, and that it takes four days for a letter mailed at Butte to reach New York, and four days for a reply, making eight days at least, and that since the date of my retention I have not had time to receive an answer to my communication of date July 17, 1893. Affiant further states that if this case is continued and the hearing of the said contest and

objections is continued for a reasonable time, from information I have been able to obtain, I believe that the said contestants will be able to produce witnesses, or take their depositions, whose names and residences I am not familiar with at present, and do not know, who will testify that the said will offered for probate by proponent in this cause is not the last will and testament of Andrew J. Davis, deceased, and is not entitled to be probated as the will of Andrew J. Davis, deceased, and that the said Andrew J. Davis, deceased, never made, executed, nor signed the said will in the presence of the said witnesses whose names are attached thereto, nor either of them, nor published the same as his last will and testament, and that the said witnesses never signed the said will in his presence, but that owing to the fact of my being taken by surprise by the application to continue the trial of the contest of the said Henry A. Root, I am unable at this time to procure the said witnesses, or their names or residences, or their attendance upon court for the purpose of presenting said facts, and I have not had time to take their depositions.

"WHEREFORE, affiant asks 'that the trial of the contests of Harriet R. Sheffield and Henry A. Davis be continued and that all of the said contests be tried together."

Upon July 26th the court overruled the motion for a continuance, to which ruling the contestants excepted. Upon the next day, July 27th, the court called the contest of Sheffield and Davis for trial, and, upon motion of the said proponent, dismissed the objections of the contestants and rendered judgment so dismissing said contest. The order dismissing the contest is substantially as follows:

"Now on this 27th day of July, 1893, in open court, this contest came on for trial, the contestants Harriet R. Sheffield and Henry A. Davis appearing by John W. Cotter, their attorney, and the proponent John E. Davis by W. W. Dixon, M. Kirkpatrick, and Forbis & Forbis, his attorneys, and thereupon said contestants moved the court to be allowed to dismiss their said contest without prejudice, which said motion was overruled by the court, and the court ruled that he would sustain the motion to dismiss the contest but not without prejudice, if contestants so desired, but contestants declined to dismiss

said contest, except without prejudice, and excepted to the ruling of the court refusing to allow the dismissal of said contest without prejudice.

"And thereupon said John W. Cotter, in open court, withdrew his appearance as attorney for said contestants, and the contest now coming on regularly for trial, neither of said contestants appeared in person or by attorney, and thereupon, upon motion of proponent's counsel, it is ordered and adjudged by the court that the said contest of the said Harriet R. Sheffield and Henry A. Davis be dismissed, and that proponent recover of said contestants his (proponent's) cost of said contest taxed at ———— dollars, to which ruling of the court and judgment of dismissal and for costs the said John W. Cotter excepted at the time."

Upon the 20th of October, 1893, the said contestants Sheffield and Davis moved the court to set aside the default and open the judgment rendered against them, and that they should be admitted to contest the will upon their objections so filed. Messrs. Cullen and George F. Shelton appeared as attorneys for the contestants in filing this motion. The motion was based upon the following grounds to wit: The court exceeded its jurisdiction in dismissing the said objections and striking the same from the files.

Second. Because the said order was made and taken against the contestants by reason of their mistake, inadvertence, surprise, and excusable neglect in this, to wit:

(a) The said action had never been revived as to these plaintiffs, or either of them.

(b) The said action had been revived as to the Root and Cummings objections, and plaintiffs had the right to rely upon the supposition that said case would not be called for trial as to them until it had been first revived as against them.

(c) The plaintiffs were taken by surprise by the filing of an answer to their objections to the "probate of said alleged will by the said defendant on the 13th day of May, 1893, a default therein having existed from the 12th day of September, A. D. 1890, by the failure of defendant to file any answer to such objections, and also because no leave of court was obtained to file such answer, or notice given these plaintiffs that defendant

would file the same, and because there had been no revivor of said action as to them before the filing of said answer or the date when said case was called for trial on such objections and answer.

"(d) Because the plaintiffs had the right to rely upon the statements made by counsel for Henry A. Root and Maria A. Cummings, that the case would be tried on the objections filed in their behalf, and the neglect of plaintiffs to summon witnesses to establish the issues on their part was excusable.

"(e) Because the plaintiffs were surprised by the withdrawal of E. Warren Toole as their counsel, upon whom they relied to look after their interests, at a time so shortly before the said case was called for trial that they had not time to secure other counsel in time to properly prepare said case for trial.

"(f) Because the counsel whom they employed at the suggestion and on the recommendation of the honorable judge of this court was so occupied with other business that he could not properly prepare plaintiffs said case for trial after the time when plaintiffs' engaged him and before the time said cause was called for trial.

'(g) Because plaintiffs were taken by surprise by the stipulations entered into by counsel for Henry A. Root and Maria A. Cummings, and for proponents, whereby it was agreed that the contest of these plaintiffs and of Henry A. Root and Maria A. Cummings should be tried separately, and that the contest of Henry A. Root and Maria A. Cummings should be continued until called up by consent of both sides, in violation of the express understanding and agreement between plaintiff and Henry A. Root and Maria A. Cummings.

"(h) Because the death of proponent John A. Davis, and the appointment of John E. Davis as administrator and his substitution as proponent before answer had been filed to the contest of these plaintiffs, was such a change in the conditions of the parties to said suit as would warrant the continuance of the case upon application of either side.

"This motion will be made upon the affidavits of William L. Snyder, Martin J. Keogh, and John W. Cotter, and upon the files and records of said cause particularly referred to in said affidavits."

To support that motion contestants filed the affidavit of William L. Snyder, who swears "that he is an attorney and counselor at law, engaged in the practice of his profession in the city and county of New York, and has been such attorney and counselor for many years last past; that deponent is associated with Martin J. Keogh, an attorney and counselor at law engaged in the practice of his profession in the city and county of New York, and that the said Martin J. Keogh is the attorney for Harriet R. Sheffield and Henry A. Davis, a niece and nephew of Andrew J. Davis, late of the city of Butte, county of Silver Bow, state of Montana, deceased; that the said Harriet R. Sheffield and Henry A. Davis are children of Asa Davis, a deceased brother of said Andrew J. Davis, who died on the 11th day of March, 1890, at said city of Butte, intestate and unmarried, leaving an estate of the estimated value of five millions of dollars, as deponent verily believes, and as such heirs and next of kin of said Andrew J. Davis are entitled to share in his estate, and are entitled, as deponent is informed and verily believes, to an eleventh part or share of said estate.

"Deponent further says that upon the death of said Andrew J. Davis, said Harriet R. Sheffield and Henry A. Davis retained said Martin J. Keogh as their attorney to represent them in all matters pertaining to the estate of said Andrew J. Davis, and this deponent acted as associate counsel with said Martin J. Keogh in all matters pertaining to said estate, for and on behalf of said Harriet R. Sheffield and Henry A. Davis."

The affidavit of Snyder then recites the matters of record in relation to the petition of Davis for letters of administration under the will, and continues as follows:

"That thereupon a contest arose as to the genuineness of said instrument so proposed as the will of said deceased; contestants claiming it to be a forgery and that Andrew J. Davis had made subsequent wills, which contest is still pending and undetermined in this court. That in the early proceedings with reference to the administration of the estate of the said Andrew J. Davis, said Martin J. Keogh appeared and attended at the city of Butte, in the state of Montana, representing the

interests of his clients, said Harriet R. Sheffield and Henry A. Davis.

"After said alleged will and petitions for probate thereof were filed, Martin J. Keogh, on behalf of his clients, Harriet R. Sheffield and Henry A. Davis, filed in the office of the clerk of this court, on the 9th of August, 1890, objections to the probate of said alleged will, and upon the same day objections to the probate of said alleged will were also filed by Henry A. Root and Maria A. Cummings. Deponent further says: that he is informed and believes that the objections so filed by said Harriet R. Sheffield and Henry A. Davis, and by said Henry A. Root and Maria A. Cummings, were the only objections so filed by any of the heirs of the said Andrew J. Davis, and constitute the only contest with respect to said alleged will. That on said 9th day of August, 1890, sundry petitions were filed for special letters of administration upon the estate of Andrew J. Davis, deceased, and the court, after hearing said objections, on the 12th day of August, 1890, made an order appointing James A. Talbott as special administrator of said estate, and directed said administrator to execute a bond to the state of Montana, with two or more sufficient sureties, in the sum of three millions of dollars, and on the 18th day of August, 1890, said Talbott filed said bond, which was duly approved by the court on that day, and said Talbott thereupon entered upon his duties as such special administrator, and is still such special administrator; to which said order and bond deponent refers and makes the same a part thereof.

" Said Martin J. Keogh and this deponent, being residents of the state of New York, and being unable to attend personally to represent the interests of said Harriet R. Sheffield and Henry A. Davis in the courts of Montana, retained E. Warren Toole as the attorney and counsel for said Harriet R. Sheffield and Henry A. Davis, and said Toole accepted said retainer and agreed to act as the attorney and counsel as aforesaid in all matters pertaining to the estate of Andrew J. Davis, deceased.

"Deponent further says that, during the lifetime of said John A. Davis, no answer was ever filed to the objections of

said Harriet R. Sheffield and Henry A. Davis, and no issue
was ever joined upon said objections. That on the 19th day
of August, 1890, John A. Davis filed a demurrer to the fifth
and sixth grounds of objections filed by said Harriet R. Shef-
field and Henry A. Davis, but the first four grounds of said
exceptions were never demurred to, and no answer thereto was
ever filed during the lifetime of said John A. Davis, and
deponent refers to said demurrer and makes the same a part
of this affidavit. Demurrer was also filed to objections filed
by said Henry A. Root. That said demurrers were heard on
the 23d day of August, 1890, and thereafter, on the 2d day
of September, 1890, an order was duly made and entered
herein sustaining the demurrer to the objections of Harriet
R. Sheffield and Henry A. Davis, and to the objections of
Thomas Jefferson Davis and the objections of said Henry A.
Root; to which said order deponent refers and makes the same
a part of this affidavit. That thereafter, on the 23d day of
October, 1890, issue was joined upon the objections of Henry
A. Root and Maria A. Cummings by an answer duly filed on
that day. That no answer was filed to the objections of Har-
riet R. Sheffield and Henry A. Davis. Various proceedings
were had in the matter of the probate of said alleged will,
and elaborate preparations were made for the trial of the con-
test filed by said Henry A. Root and Maria A. Cummings upon
the issues joined by the answer of the proponent John A.
Davis.

"Deponent further says that Henry A. Root and Maria A.
Cummings demanded a jury trial upon the issues to the con-
test raised by the answer of John A. Davis to the objections
filed by them. That said trial was commenced on the 27th
day of July, 1891, and continued until the 9th day of Septem-
ber, 1891, when the jury disagreed and were discharged.
Deponent further says that the said trial involved an expendi-
ture of not less than fifty thousand dollars. Deponent further
says that no trial was had upon the objections filed by depo-
nent's clients, Harriet R. Sheffield and Henry A. Davis, and
that, as a matter of fact, no issue was joined upon said contest,
and no answer had been filed thereto, although neither depo-
nent, nor said Martin J. Keogh, were aware of the fact at that

time that no such answer had been filed, and neither this deponent, nor said Martin J. Keogh, were advised that their clients, Harriet R. Sheffield and Henry A. Davis, were entitled to a decree of default on the part of proponent to file an answer to their objections; but this deponent and said Keogh, having allowed their interests to be attended to by E. Warren Toole, supposed that whatever rights they were entitled to would be secured by the vigilance of their said counsel, said E. Warren Toole. Deponent further says that he remained in the city of Butte during said trial until the said trial was was over, and until the jury had been discharged, and thereafter deponent proceeded to his home in the city of New York, leaving said E. Warren Toole to look after the interests of his said clients.

"Nothing more was heard by this deponent, or by said Keogh, or by deponent's said clients, either through McConnell & Clayberg or said E. Warren Toole, in relation to the condition of said contest, until the 16th day of June, 1893."

The affidavit then sets forth the revival of the contests in the name of John E. Davis, as administrator of his father's estate, and the order of the court, and the fact that no notice of such revival was ever given to Sheffield and Davis, or to E. W. Toole as the attorney for Sheffield and Davis, although notice of said application for revival was given to the various firms of lawyers who appeared as attorneys for Root and Cummings. There follows considerable matter in relation to the demurrer to the objections of said Sheffield and Davis having been passed, but all such matter, being immaterial for the present consideration of the case, is omitted. Mr. Snyder further continues:

"Deponent further says that, believing the rights of his said clients to be secured under the supervision of the said E. Warren Toole, and relying wholly upon said E. Warren Toole to advise deponent as to his rights in the matter, neither deponent nor said Keogh took any active steps, and received no further notice in the premises until about the 20th day of June, 1893, when said Keogh received a letter from said E. Warren Toole in which said Toole stated that he would not longer act as attorney for said Harriet R. Sheffield

and Henry A. Davis. Said letter contained the information
that the trial of the issues upon the contest of the alleged will
of Andrew J. Davis was set for the 26th day of July, 1893,
a copy of which said letter is hereto attached, marked
'Exhibit B.'

" Deponent further says that thereupon deponent consulted
said Keogh and concluded to write to Mr. Corbett, who was
also associated with Mr. Toole in the trial of said action, to
act as counsel for deponent's clients, and also to endeavor to have
Mr. Toole to reconsider his withdrawal as attorney for said
Harriet R. Sheffield and Henry A. Davis. That thereupon a
letter was written to said Corbett requesting him to act as at-
torney for deponent's said clients, and to advise Mr. Toole that
our position was not hostile to any other clients represented
by him, and asking him to remain as counsel for said Harriet
R. Sheffield and Henry A. Davis. That said letter was sent
to Mr. Corbett, and, after the lapse of several days, said Keogh
received a telegram from said Corbett announcing that he
could not act as counsel, and said Corbett further advised us
that said Toole could not act. That thereupon said Keogh
telegraphed to Judge McHatton, the judge of this court, re-
questing said McHatton to suggest the name of some suitable
person to act as attorney for said Harriet R. Sheffield and
Henry A. Davis in the approaching trial. That said Keogh
received a telegram from said McHatton, in which he suggested
the name of John W. Cotter, city attorney of Butte City, as a
proper person to retain on behalf of deponent's client. That
said Cotter was immediately communicated with and consented
to be retained on the 17th day of July, 1893, as more fully
appears by the affidavit of said Cotter, a copy of which is
hereto annexed. That said Cotter stated that he was at that
time engaged in the trial of a mining suit in the city of Butte,
which said suit was then actually on trial, which said trial was
not finished until the 23d day of July, 1893, at 5:30 o'clock
in the afternoon of that day. Deponent further says that said
Cotter appeared on said 24th day of July, 1893, as deponent is
informed and verily believes, and made an application to the
court for a continuance of said contest, upon the ground that
he, the said Cotter, was only retained upon the 17th day of

July; that he had been actually engaged since the time of his retainer until the 23d day of July; that he had no time in which to prepare for the prosecution of said action; and the said Cotter further relied upon the stipulations filed in said action by the proponent and by the contestants Henry A. Root and Maria A. Cummings, on the 29th day of April, 1893, providing that said contest should not be continued, and that no continuance thereof should be asked for by either party, unless for cause that might arise after the stipulation was filed. Deponent further says that on said 24th day of July, 1893, the contestants Henry A. Root and Maria Cummings made a stipulation with the proponent, whereby they agreed to separate the contest of said Henry A. Root and Maria A. Cummings from the contest of any other party against the probating of said will, and further agreed to continue the contest of said Root and Cummings until either party should bring the same upon ten days' notice, copies of which said stipulation, and the affidavit of the said John W. Cotter, are hereto annexed and made a part of this affidavit. Deponent further says that said court refused to continue the said contest of Harriet R. Sheffield and Henry A. Davis, and that the said court dismissed said alleged contest, and an order dismissing the same was entered on the 27th day of July, 1893, a copy of which is hereto annexed and made a part of this affidavit.

" Deponent further says that said Harriet R. Sheffield and Henry A. Davis have no means and no property except their interest in this estate; that the said contestants are absolutely without means with which to procure the necessary witnesses upon such short notice, or to arrange to secure the funds with which to procure the attendance of the witnesses to prosecute the trial of said contest. And deponent further says that from said stipulation filed on the 24th day of July, 1893, it appears that no separate trial of the said contest had ever been asked or applied for until the 24th day of July, 1893, and said Cotter relied upon said stipulations and the fact that the issues had never been separated, believing that the said issues would be tried together as one issue, as more fully appears by the affidavit of said Cotter, which is hereto annexed. Deponent further says that from the time of the receipt of the

letter of said E. Warren Toole refusing to act as counsel for deponent's said clients, to wit, the 20th day of June, 1893, until the date when said contest was set for trial, to wit, the 24th day of July, 1893, it was physically impossible for this deponent, or said Keogh, to prepare for the trial of said contest as a separate contest, or to retain and engage additional counsel, and deponent and said Keogh relied upon the fact that the said contest had never been separated and had always been regarded and treated as a single issue, and that no application had ever been made, and no notice had ever been given for the separation of said contests, and that, in order to properly prepare for the trial of said issue as a separate contest, not less than two months would have been required, after proper counsel had been retained, within which to arrange to secure the proper and necessary funds and to secure witnesses for the trial of said contest.

"Deponent further says that the reason why this affidavit is made by deponent, and not by the said Harriet R. Sheffield and Henry A. Davis, is because that Harriet R. Sheffield is now at New Rochelle, in the county of West Chester, state of New York, and the said Henry A. Davis is now in the town of Munson, in the state of Massachusetts, and that the said Sheffield and Davis are not personally cognizant of many of the facts set forth in this affidavit, and that said Keogh is now in the city and county of New York, and that it is necessary for deponent to make this affidavit for the reason that he is personally cognizant of many of the facts herein set forth, and has personally examined the minutes and records of the court, and personally attended the trial of the contest between proponent and Henry A. Root and Maria A. Cummings.

"Deponent further says that this contest is a *bona fide* and meritorious contest. That the said paper purporting to be the last will and testament of Andrew J. Davis is, as deponent is informed and believes, a forgery, and that since the alleged paper purporting to be the said last will and testament is alleged to have been .made, as deponent is informed and believes, the said Andrew J. Davis made other wills, to wit, in 1874, 1884, and 1889. And deponent further says that this application has been made with all due diligence, and that

deponent was unable to make the application without a personal examination of the records of this court, and was only able to make this examination on the 25th and 26th days of August, 1893.

"Deponent further says that the contestants Henry A. Root and Maria A. Cummings have come to an understanding with the proponent, whereby they have agreed to separate their contest apart and distinct from any other contest, and have agreed to postpone the trial of said contest, so that the said contest will never be tried unless said contestants and said proponent agree thereto, as appears by the stipulation filed by said contestants and said proponent on the 24th day of July, 1893, and deponent is informed and verily believes that said stipulation is the result of an agreement and understanding, made and entered into between the said contestants Henry A. Root and Maria A. Cummings and said proponent, whereby all other contests should be dismissed, so that the said contest of Henry A. Root and Maria A. Cummings may be withdrawn, and said alleged will of Andrew J. Davis allowed to be probated, in order that said estate may be divided between the legatees named in said will and the said Henry A. Root and Maria A. Cummings, to the entire exclusion of the said Harriet R. Sheffield and Henry A. Davis.

"Deponent further says that if the application to set aside the order of this court, made on the 27th day of July, 1893, dismissing the objections made by the said Harriet R. Sheffield and Henry A. Davis to the probating of said alleged will, be set aside, the said contestants will be able to show upon the trial of their said objections that the said alleged will of Andrew J. Davis is not his last will and testament, but that the same is a forgery, and that the said decedent made other wills after the date of the said alleged will offered by proponent to be probated. That, if said order is so set aside, affiant has reason to believe that the said contestants Harriet R. Sheffield and Henry A. Davis can, within a reasonable time, prepare for the trial of their said objections."

The letter of Messrs. Toole and Wallace, and Cullen and Clayberg, referred to in the affidavit of Mr. Snyder, is as follows:

"At the time we agreed to attend to the contest for the Davis heirs whom you represent you will remember that it was with the express understanding that their interests were identical with those of Mr. Root and those united with him in making the defense to the probate of the will. You will also remember that Erwin Davis was assisting in probating the same, and that his interests and those of Mr. Root and those united with him have always been regarded as antagonistic.

"I have been informed by parties who seem to know about the matter that the heirs which were represented by you have sold out their interest in the estate to Erwin Davis, and Mr. Root and his party are unwilling that I should have any further connection with the matter for them. Under this condition of things, and having received no notice from you or them as to this sale or transfer of their interest, I write you for the purpose of letting you know that I shall sever my connection with the case, and do this in ample time that you may have an opportunity to procure counsel to look after their interests, if it is desirable to do so. The case, I understand, is set for trial on the 26th day of July. Your presence, or the presence of some one to represent these heirs, will certainly be absolutely necessary.

"Messrs. Clayberg & McConnell, who are associated with us in this matter, which was fully explained to you at the time the arrangement was made with us, join us in this letter and they will no longer have any thing more to do with the case, but likewise withdraw for the reasons we have herein stated."

These contestants also filed the affidavit of Martin J. Keogh, which was substantially as follows:

"Martin J. Keogh, being first duly sworn, deposes and says that he is an attorney and counselor at law, engaged in the practice of his profession in the city and county of New York, and has been so engaged for many years last past; that deponent is the attorney for Harriet R. Sheffield and Henry A. Davis, a niece and nephew of Andrew J. Davis, late of the city of Butte, county of Silver Bow, and state of Montana, deceased; that Harriet R. Sheffield and Henry A. Davis are children of Asa Davis, a deceased brother of said Andrew J. Davis, who died on the 11th day of March, 1890, at the city

of Butte, intestate and unmarried, and leaving an estate of the estimated value of at least five million dollars ($5,000,-000), as deponent verily believes. And, as such heirs and next of kin of said Andrew J. Davis, deponent's said clients are entitled to share in said estate, and are entitled to receive therefrom, as deponent is informed and verily believes, one-eleventh part of said estate.

"Deponent further says, that, upon the death of said Andrew J. Davis, said Harriet R. Sheffield and Henry A. Davis retained this deponent to represent them in all matters pertaining to the estate of said Andrew J. Davis.

"Deponent further says, that, when said Andrew J. Davis died, there was no question as to the heirship of deponent's clients and no dispute as to the share to which they were entitled being one-eleventh part of said estate.

"It was agreed by all parties that said Andrew J. Davis died intestate, and no question was raised as to there being any will of said Andrew J. Davis in existence. Application for letters of administration upon the estate of said Andrew J. Davis was made by Henry A. Root, a nephew, who then claimed to be a citizen of Montana, and who removed to Helena, Montana, for that purpose, and also by John A. Davis, a brother of the deceased, who resided in said city of Butte, in said state of Montana, and in these petitions for letters of administration the petitioners swore that said Andrew J. Davis died intestate. Upon these applications for letters of administration the contest arose as to whom letters should be granted. This deponent, as attorney for said Harriet R. Sheffield and Henry A. Davis, went to the state of Montana to represent the interests of his clients, and appeared in the court upon the application for a temporary administrator upon the estate. Thereafter it was claimed that a will, purporting to have been executed by Andrew J. Davis in 1866, was found in Iowa. This alleged will gave the bulk of the estate to John A. Davis, the brother of the deceased, who was then applying for letters of administration upon the estate, and made certain bequests to Thomas Jefferson Davis and Pet Davis, who claimed to be natural children of said Andrew J. Davis. On the 24th day of July, 1890, said John A. Davis

filed his petition in this court, and therewith presented said alleged instrument purporting to be the last will and testament of said Andrew J. Davis, deceased, and prayed that the same be admitted to probate, and that upon its admission to probate said John A. Davis be appointed administrator with the will annexed of the estate of the said Andrew J. Davis, deceased; that thereupon a contest arose as to the genuineness of said instrument so proposed as the will of said deceased, contestants claiming it to be a forgery, and claiming also that Andrew J. Davis had made subsequent wills.

"Deponent further says that the contest upon said alleged will is still pending and undetermined in this court.

"Deponent further says that on behalf of his clients, Harriet R. Sheffield and Henry A. Davis, deponent had, on the 9th day of August, 1890, filed objections to the probate of said alleged will in the office of the clerk of this court on the 9th day of August, 1890, and upon the same day objections to the probate of said alleged will were also filed by Henry A. Root and Maria A. Cummings.

" Deponent further says that he is informed and believes the objections so filed by Harriet R. Sheffield and Henry A. Davis, and by the said Henry A. Root and Maria A. Cummings, are the only objections so filed by the heirs of said Andrew J. Davis, and constitute the only objections with respect to the said alleged will; that on the said 9th day of August, 1890, sundry petitions were filed for special letters of administration upon the estate of said Andrew J. Davis, deceased, and the court, after hearing the said objections, on the 12th day of August, 1890, made an order appointing James A. Talbott as a special administrator of said estate, and instructed said administrator to execute a bond to the state of Montana in the sum of three million dollars ($3,000,000), and on the 18th day of August, 1890, said Talbott filed the said bond, which was duly approved by the court on that day, and said Talbott thereupon entered upon his duties as such administrator, and is still such administrator, to which said order and bond this deponent refers upon this application.

"Deponent further says that he was obliged to return to his home in the state of New York to attend to his practice, being

unable to attend personally to the interests of his clients, Harriet R. Sheffield and Henry A. Davis, in the courts of Montana, and the deponent retained E. Warren Toole as attorney and counsel for the said Harriet R. Sheffield and Henry A. Davis, and said Toole accepted said retainer and agreed to act as attorney and counsel for deponent's said clients in all matters appertaining to the estate of said Andrew J. Davis, deceased, and deponent intrusted the interests of his said clients implicitly to the said E. Warren Toole.

"And deponent further says that William L. Snyder, attorney and counselor at law, engaged in the practice of his profession in the city and county of New York, was associated with this deponent as counsel for deponent's said clients, said Harriet R. Sheffield and Henry A. Davis; that during the trial of the contest upon the alleged will of said Andrew J. Davis, in July, August, and September, 1891, said William L. Snyder proceeded to the state of Montana and to the city of Butte, in said state, and attended upon said trial in the interests of deponent's said clients, Harriet R. Sheffield and Henry A. Davis.

"Deponent further says that said William L. Snyder, in the month of August, 1893, also proceeded to the said state of Montana in the interest of deponent's said clients, Harriet R. Sheffield and Henry A. Davis, for the purpose of investigating the record, and securing a history of the entire proceedings with respect to the contest upon the will of said Andrew J. Davis. . . . .

"Deponent further says that the said Root and Cummings demanded a jury trial upon the issues raised by the answer of John A. Davis to the objections filed by them to the probate of said alleged will of Andrew J. Davis; that the trial of issues was commenced on the 27th day of July, 1891, and continued until the 9th day of September, 1891, when the jury disagreed and were discharged.

"Deponent further says that the said trial, as appears by the affidavit of said Snyder hereinbefore referred to, was very expensive, and involved an expenditure of not less than fifty thousand dollars ($50,000).

"Deponent further says that no trial was had upon the

objections filed by this deponent on behalf of deponent's said clients, Harriet R. Sheffield and Henry A. Davis, and that, as a matter of fact, no answer has been filed thereto in the lifetime of said proponent, John A. Davis. And deponent says that E. Warren Toole, under and by virtue of an agreement made by said Toole with this deponent, whereby he agreed to protect the interests of said clients, Harriet R. Sheffield and Henry A. Davis, could have entered an order upon said default so as to protect the interests of deponent's said clients, but that said Toole failed to inform deponent or said Snyder of their rights in the premises, and no order was ever entered upon said default by said Toole. . . . .

" Deponent further says that, believing the rights of his said clients to be secure under the supervision of said E. Warren Toole, and relying solely upon E. Warren Toole to advise deponent as to his rights in the matter, deponent took no active steps and received no further notice in the premises until the 20th day of June, 1893, when deponent received a letter from said E. Warren Toole, dated at Helena, Montana, the 16th day of June, 1893, in which said Toole stated that he would no longer act as attorney for Harriet R. Sheffield and Henry A. Davis. Said letter contained the information that the trial of the issues upon the contest of the alleged will of said Andrew J. Davis was set for the 26th day of July, 1893, when, as a matter of fact, said trial was set for the 24th day of July, 1893. Said letter is attached to the affidavit of said Snyder, reference to which is hereto had. Upon receipt of said letter deponent began to make inquiries as to a proper person to represent deponent's interest upon said trial, and deponent finally concluded to write to Frank E. Corbett, Esq., of the firm of Corbett & Wellcome, of the city of Butte, attorneys and counselors at law, who were also associated with E. Warren Toole and McConnell & Clayberg on behalf of the contestants of said will, to endeavor, if possible, to have said Corbett appear for, and represent the interests of, deponent's clients in said action, which said letter bears date the 28th day of June, 1893, and is referred to in the affidavit of said Snyder, and to which deponent also refers, and in said letter deponent stated that deponent's said clients had not sold their interests

in said estate to Irwin Davis, and had made no assignment of said interests to him, and deponent in said letter requested said Corbett to telegraph deponent, upon receipt of said letter, whether he was willing to act as attorney for deponent's said clients.

"Deponent further says that upon the 5th day of July, 1893, deponent received a telegram from Messrs. Corbett & Wellcome in response to said letter, as follows:

"'We cannot act for your clients in the Davis case. We do not feel like taking the responsibility of recommending a lawyer here.'

[SIGNED]    'CORBETT & WELLCOME.'

"The time being so short, deponent found himself obliged to retain counsel, if possible, by telegraph, the matter being of great importance, and, on the same day that deponent wrote to said Corbett, to wit, the 28th day of June, 1893, deponent sent a telegram to the Hon. Judge McHatton, a judge of this court, asking if he would suggest the name of an attorney who could properly represent the interests of deponent's said clients upon the contest of the will of Andrew J. Davis, deceased, and deponent received a telegram in answer thereto from Judge McHatton as follows, answering and giving name of John W. Cotter, city attorney of Butte, signed, Judge McHatton.

"Deponent further says, that, immediately upon the receipt of said telegram from Messrs. Corbett & Wellcome declining to act as attorney for deponent's clients, deponent communicated with said John W. Cotter, and said Cotter, on the 17th day of July, 1893, consented to act as attorney and to represent the interests of deponent's clients upon the contest of said alleged will; said Cotter, however, stated to said deponent that he was then engaged in the trial of a mining case, and that he would give his attention to the matter as soon as the trial of said case was ended.

"Deponent is informed that said Cotter made an affidavit, which is on file in the office of the clerk of this court, in which said Cotter stated that said trial was not concluded until 5:30 o'clock on the afternoon of the 23d day of July, 1893, so that said Cotter had no time within which to prepare for the trial of said contest, and said Cotter further relied upon the stipula-

tions filed herein that no further adjournment of this court was to be had as to the contest of Henry A. Root and Maria A. Cummings, which said stipulation was dated on the 29th day of April, 1893, and copies of which are attached to the affidavit of William L. Snyder, hereinbefore referred to.

"Deponent further says that he, too, was led to believe that the trial of the issues of said Root and Cummings would be taken up and disposed of at the same time that the trial upon the objections of this deponent should be urged, and deponent was so informed by Messrs. Corbett & Wellcome, who were also associated with Mr. Toole as counsel for contestants, in a letter from them received by deponent, bearing date April 22d, 1892, which contains the following statement: 'Forbis Brothers have stated to me that they have no intention of forcing trial upon your objections upon any earlier date than upon Root and Cummings' objections, and Mr. James W. Forbis stated to me that the demurrer being disposed of should stand continued for hearing, subject to the same conditions as the Root and Cummings objections.' Copy of said letter is hereto annexed and made a part of this affidavit.

"Notwithstanding these facts deponent learned that upon the 24th day of July, 1893, notwithstanding the fact that no issue was joined upon the objections of deponent's clients until the 13th day of May, 1893, the attorneys for proponent entered into a secret agreement with attorneys for the contestants Henry A. Root and Maria A. Cummings, whereby a stipulation was entered into on that day attempting to sever said contest of Henry A. Root and Maria A. Cummings from the contest of any other parties against the probate of said will of Andrew J. Davis, and continuing the trial of said contest of said Root and Cummings until the first day of September, 1893, and until such time thereafter as should be agreed upon by the parties, and more fully appears by said stipulation, a copy of which is attached to the affidavit of said Snyder.

"Deponent further says, that, in view of this last stipulation, said John W. Cotter applied to the court for a continuance upon the affidavit setting forth all the facts, and setting forth his inability to prepare for the trial of the contest alone, a copy

o

of which said affidavit is annexed to the moving papers herein, but deponent is informed and believes that the said application of said Cotter was overruled, and that the contest of deponent's clients, Harriet R. Sheffield and Henry A. Davis, was summarily dismissed by the court.

"Deponent further says that this contest is a *bona fide* and meritorious contest; that the said paper purporting to be the last will and testament of Andrew J. Davis is, as deponent is informed and believes, a forgery, and that, since the alleged paper purporting to be the last will and testament is alleged to have been made, the said Andrew J. Davis made other wills, to wit, in 1874, 1884, and 1889, as deponent is informed and verily believes.

"Deponent further says that this application has been made with all due diligence, and that deponent was unable to make the application without having a personal examination of the records of this court made, and that said examination of the records was made by William L. Snyder, as counsel for said contestants on the 25th and 26th days of August, 1893, as appears by the affidavit of said Snyder.

"Deponent further says that he is informed and believes that the contestants Henry A. Root and Maria A. Cummings have come to an understanding with the proponent, whereby they have agreed to separate their contest apart and distinct from any other contest, and have agreed to postpone the trial of said contest so that the said contest will never be tried unless said contestants and said proponent agree thereto, and, as appears by the stipulation filed by the said contestants and proponent on the 24th day of July, 1893, and deponent is informed, and verily believes, that said stipulation is the result of an agreement and understanding made and entered into between the said contestants Henry A. Root and Maria A. Cummings and said proponent, whereby all their contests should be dismissed so that the said contest of Henry A. Root and Maria A. Cummings may be withdrawn, and said alleged will of Andrew J. Davis allowed to be probated, in order that said estate may be divided between the legatees named in the will and the said Henry A. Root and Maria A.

Cummings, to the entire exclusion of Harriet R. Sheffield and Henry A. Davis.

"Deponent further says that if the application to set aside the order of this court, made on the 27th day of July, 1893, dismissing the objections made by the said Harriet R. Sheffield and Henry A. Davis to the probate of said alleged will, be set aside, he is advised that the said contestants will be able to show, upon the trial of their said objections, that the said alleged will of Andrew J. Davis is not his last will and testament, but that the same is a forgery, and that the said testator made other wills after the date of said alleged will offered by proponent to be probated; that, if said order is set aside, deponent has reason to believe that the said contestants Harriet R. Sheffield and Henry A. Davis can, within a reasonable time, prepare for the trial of their said objections.

"Deponent further says that his clients have no property or estate other than their interest in the estate of their deceased uncle, said Andrew J. Davis, and that they will require a reasonable time within which to secure and arrange for funds with which to prepare for the trial of said contest to defeat the probate of said alleged will.

"Deponent further says that his clients are now, and since the death of said Andrew J. Davis have been, absolute owners of an equal undivided eleventh interest in said estate, and have not sold or assigned said interest of share or any part thereof."

The letter of Messrs. Corbett & Wellcome referred to is as as follows:

"Replying to your favor of April 18th. As I have previously written, your objections have been demurred to by the proponent (see my letter of April 16th), and the demurrer has been set for hearing on to-morrow, the 23d.

"Forbis Brothers have stated to me that they have no intention of forcing trial upon your objections at any earlier date than upon Root and Cummings' objections, and Mr. James W. Forbis stated to me that the demurrer, being disposed, should stand continued for hearing subject to the same conditions as the Root and Cummings objections.

"A demurrer to the objections filed by you has been filed, and the proponent demurs to the sufficiency of your objections

in every and all particulars — a general drag-net affair intended to capture any possible technicality or defect. If the demurrer is sustained any reasonable time to amend will be granted by the court.

"It is the practice of the court and the statute law of the state that any pleading demurred to may be amended, and in so amending, under our practice, you may state the same objection differently, or the same objections with other and new obligations, or in any other way amend as you see fit.

"The sustaining of the demurrer, if it be sustained, can in no way affect your position, as leave to amend must needs be granted and ample time permitted wherein to file amendments.

"There is no more liberal practice upon the subject of amendments than ours. Any pleading, howsoever defective, may be amended in any way without regard to whether the amendment is upon a material matter or merely upon form of pleading.

"You need give yourself no concern about the situation here, as no ruling that the court can make, however adverse to your objections, can effect your standing."

Contestants also filed the affidavit of Mr. Cotter, which is as follows:

"John W. Cotter, being first duly sworn, deposes and says: That I am an attorney of this court; on the 17th day of July, 1893, I was retained by Harriet R. Sheffield and Henry A. Davis, to represent them in this court in the trial of the contest filed by them to the will of Andrew J. Davis, deceased. At the date of my retention, as aforesaid, I was engaged in the trial of the case of *William F. Fitzgerald et al.* v. *William A. Clark et al.*, in Department No. 1 of the district court of Silver Bow county, which case was an important mining litigation, requiring my whole time and attention during the time that it was being tried. There were three sessions of the court most of the time during said trial, and I was therefore unable to give any attention at all to the business of the said Sheffield and Davis until after said trial was finished, which was on Saturday, the 22d day of July, 1893. I considered this matter, however, of little importance at the time, as I firmly believed that the case would be tried as to the other contest-

ants, namely, H. A. Root and Maria A. Cummings, in which case a trial had previously been had and the determination of which would determine the issues practically as to the said Sheffield and Davis, or, if there was another trial as to the contest of the said Sheffield and Davis, the witnesses subpœnaed for the trial of the Root and Cummings contest would be sufficient for my purpose. I was more firmly of this opinion and belief from the fact that I found among the papers on file a stipulation between the proponents of the will and the said Root and Cummings, that there should be no further continuance of the case, which stipulation was filed on the 29th day of April, 1893. From the time that the case of *Fitzgerald* v. *Clark* closed until the calling of this case for trial it would have been utterly imposible to prepare for the trial of such an important case, and I was therefore greatly surprised when a stipulation for a continuance of the cause, so far as the contest of Root and Cummings was concerned, was filed on the 24th day of July, 1893, as I had no anticipation of any such continuances, and I was still more surprised when the case was called for trial as to the contest of the said parties whom I represented. I had no reason to believe up to that time that there would be any separate trials as to the contests, there having been no demand made or proceedings taken to separate such trials of said contests. Finding myself thus wholly unprepared for trial and being desirous of preserving as far as possible, the rights of my clients in the matter, I was willing, when the case was called for trial, to dismiss the same without prejudice, and made a motion to that effect, a motion for a continuance having been previously made and overruled. The court, however, would not permit me so to dismiss the case, and thereupon I withdrew from it, whereupon the court, upon motion of W. W. Dixon, counsel for the proponent, dismissed the said cause, as appears by the records of this court."

In opposition to these affidavits and the motion to set aside the default the proponent filed the affidavit of Mr. E. W. Toole, which is substantially as follows:

"That, in connection with John B. Clayberg, he was employed by said Keogh and Snyder to represent the interests of Harriet R. Sheffield and Henry A. Davis, as one of their

attorneys in the matter of their objections in writing to the probate of the will of the said Andrew J. Davis, deceased; that as such attorney he entered into the agreement referred to in their said affidavits, subject to the modifications set forth in the affidavit of the said Clayberg and Henry A. Root, to which reference is made; that it was expressly agreed and understood that affiant and said Clayberg should not and would not attend to any matters for, or on account of, one Irwin Davis, whose interests were at the time believed to be adverse to the interests of the said Henry A. Root and Maria A. Cummings, who were also contesting the probate of the said will, and for whom affiant had for a long time theretofore been retained and employed, which said contest was separate and independent of the said contest of the said Harriet R. Sheffield and Henry A. Davis; that it was also expressly understood and agreed, as a further modification of said contract, that in the event the said interests of the said Root and Cummings should become inconsistent with or adverse to the interests of the said Sheffield and Davis, or in the event the said Root and Cummings should demand of affiant and said Clayberg that they withdraw as attorneys' the said affiant and the said Clayberg were at liberty so to do; that there was no understanding or agreement, impliedly or otherwise, that this affiant would communicate to said Keogh or Snyder, or said Sheffield or Davis, any facts coming to his knowledge professionally on account of his relations to said Root and Cummings in their separate contest of said will, nor was affiant under any obligation, legally or morally, to do so; and that his duty in that respect, according to the judgment of affiant, extended no further than to notify said parties of his withdrawal for the reasons heretofore mentioned. Affiant further says that some time prior to the 16th day of June, 1893, he was informed by said Clayberg that said Keogh had stated to him that he had nothing more to do with the Sheffield and Davis interests and that himself, Sheffield, Davis, and Snyder had sold out to Irwin Davis, which was the first information affiant had thereof, and which was known at the time it was made by said Keogh and Snyder to be sufficient cause to dissolve the relation of affiant as attorney of the contestants repre-

sented by them; that said Keogh and Snyder did not and never have notified affiant of the transfer by which Irwin Davis became substituted to their interests or that affiant was in any manner expected to represent said Irwin Davis in said contest, and that both said Snyder and said Keogh had full knowledge, long before the notice given them by affiant of his withdrawal from said contest, that the same was set for trial, as well as the day fixed therefor. Affiant further says that it was well understood that the contest of said Root and Cummings might be compromised and withdrawn, in so far as they were concerned, and that they were under no obligations to assist or contribute in maintaining the contest of said Sheffield and Davis, except as before stated; and that it was also well understood that if, under any agreement however, the interests of said Root and Cummings should become hostile to the interests of the said Sheffield and Davis that affiant was to cease to act for said Sheffield and Davis. Affiant further states that on or about the 16th day of June, 1893, he had in his possession a copy of what purported to be a copy of the transfer, and which affiant then and now believes to be a copy of the transfer of the interests of the said Sheffield and Davis and Keogh and Snyder to the said Irwin Davis, which reads as follows, to wit:

"Whereas, Irwin Davis, of the city of New York, one of the heirs at law and next of kin of Andrew J. Davis, late of Butte City, Montana, deceased, has acquired interests of other of the heirs of said Andrew J. Davis, and has contracted with John A. Davis with respect to the interests of said John A. Davis, whereby said Irwin Davis has acquired certain rights and interests in portions of said estate, and, whereas, said Irwin Davis represents certain heirs of said Andrew J. Davis, deceased, and, whereas, Harriet R. Sheffield, of New Rochelle, New York, and Henry A. Davis, of Munson, Massachusetts, and nephew and niece of said Andrew J. Davis are also entitled to share in the estate of said Andrew J. Davis, as heirs at law and next of kin of said Andrew J. Davis, and Harriet R. Sheffield and Henry A. Davis, having retained Martin J. J. Keogh as their attorney in all matters pertaining to the estate of said Andrew J. Davis,

"*Now this agreement,* between Irwin Davis, party of the first part, and Harriet R. Sheffield, Henry A. Davis, and Martin J. Keogh, parties of the second part, for and in consideration of the premises, and of one dollar in hand paid by the parties hereto, each to the other, the receipt whereof is hereby acknowledged,

"*Witnesseth:* Said party of the first part hereby agrees to pay one hundred and thirty-five thousand dollars ($135,000) to the parties of the second part, one hundred thousand dollars to be paid to the said Harriet R. Sheffield and Henry A. Davis, and thirty-five thousand dollars to Martin J. Keogh, as and for his fees, disbursements, and legal expenses, and said parties of the second part hereby agree to receive said sum of one hundred and thirty-five thousand dollars for all the right, title, and interest, claim, and demand of every kind and nature of said Harriet R. Sheffield and Henry A. Davis, of, in, and to the property and estate, real and personal, of which the said Andrew J. Davis dies seised and possessed, or in which he had an interest at the time of his death. It is further understood and agreed that the party of the first part shall pay said sum of $135,000 out of the first moneys or property received by him or payable to him as heir or next of kin of said Andrew J. Davis, deceased, or as attorney in fact, or by virtue of any contracts or agreements entered into by him with John A. Davis, or with other of the heirs or next of kin of said Andrew J. Davis, deceased.

"And upon receipt of said sum of $135,000 said Harriet R. Sheffield and Henry A. Davis, their heirs or legal representatives, parties of the second part, agree to execute, or cause to be executed, to said party of the first part, his heirs or legal representatives, an assignment and conveyance of all their right, title, and interest, of every kind and nature, in and to the property and estate of said Andrew J. Davis.

"It is further agreed that this agreement shall be valid and binding, without regard to result of any litigation over the estate of said Andrew J. Davis, and shall remain in full force and virtue whether it shall be adjudged in any court that said Andrew J. Davis died intestate or whether it shall be adjudged that said Andrew J. Davis left a last will and testament.

"'*In witness whereof* the parties hereto have hereunto set their hands and seals this 17th day of June, 1892.

'MRS. HARRIET R. SHEFFIELD,  [SEAL]

[SIGNED]  'HENRY A. DAVIS,          [SEAL]

'MARTIN J. KEOGH.'          [SEAL]

. . . . That it was well understood that said Irwin Davis had purchased the interest of Thomas Jefferson Davis, who claimed to be the only heir at law of said Andrew J. Davis, deceased, and generally understood the said Irwin Davis had purchased an undivided half interest of the said Andrew J. Davis, legatee in said will, and that his interests were antagonistic to the interests of said Root and Cummings, and that he was doing all in his power to defeat their claim and prevent them from sharing in said estate, and that, notwithstanding the modification of said agreement as aforesaid, said Keogh and said Snyder withheld the facts of said assignment from affiant.

" That affiant, becoming convinced that such assignment had been made and not communicated to him as it should have been, in connection with other facts coming to his knowledge professionally, as attorney for the said Root and Cummings, that their interests would probably become adverse to said Sheffield and Davis, and fearing that the same might occur and leave them in an embarrassed condition, and for the purpose of notifying them of affiant's withdrawal from their case, and apprising them of the necessity of having some one to look after their interests in the matter, and for the purpose of preventing any advantage being taken of them on account of the consummation of any agreement by which it would be improper for affiant to further appear for them, for the reasons stated affiant, on the 16th day of June, wrote, directed, and mailed the following letter to said Keogh, to wit." Here follows the letter quoted above.

"That said letter, as affiant is informed and believes, was received in due course of mail; that the mistake in the date of the trial as fixed by the court occurred as stated in the affidavit of said Clayberg; that said Keogh and Snyder both knew the proper date and do not claim to have been misled thereby, as affiant is informed and believes; that affiant not receiving

any answer in due course of mail, and feeling anxious that the interest of said contestants should be fairly dealt with and properly represented, affiant also wrote to said Keogh another letter, and mailed the same to him, which was in words and figures as follows, to wit:

" 'Helena, Montana, June 29th, 1893.
" ' *Martin Keogh, Esq.,*

" 'Dear Sir: Some time ago we wrote you notifying you of the fact that on account of the changed condition in affairs, resulting from a sale of our clients' interests in the Davis estate, that we could not further appear for them in that contest, explaining to you fully the reasons that necessitated this course.   As we have not heard from you in reply, we again write you and notify that the case is set for trial on the 26th day of July, 1893, and that unless some one is employed to represent your people the case may be called up and pressed for trial in the absence of any one representing them.   Kindly acknowledge receipt of this letter.

" 'Yours truly,
[signed]   ' "Edwin W. Toole.'

"Which said letter was duly received by said Keogh; that neither of said letters was answered until the 15th day of July, 1893, when affiant received the following letter:

" 'Martin J. Keogh,          In re A. J. Davis' Estate.
   " 'Temple Court.

" 'New York, July 13th, 1893.

" 'Gentlemen: In reply to your favor of June 16th, in which you state you withdraw as counsel for Mrs. Harriet R. Sheffield and Henry A. Davis and will no longer represent them, I beg to say that, this being the case, our agreement with you as to compensation of course goes for nothing.   Hoping Mr. Toole is quite well, I remain

" ' Faithfully yours,
[signed]   " 'Martin J. Keogh.

" ' *To Messrs. Toole and Wallace, Helena, Montana.'*

"That affiant heard no more from said Keogh and supposed his withdrawal was satisfactory, until about the 31st day of July, when he received from said Keogh, the following letter:

"'MARTIN J. KEOGH,
    "'Temple Court.
                                "'NEW YORK, July 27th, 18—.
"'Mr. E. W. Toole, Helena, Montana,

"'MY DEAR SIR: I very much regret the necessity of writing you this letter. When I received your letter of June 16th, stating that you would withdraw as counsel for Mrs. Sheffield and her brother, and when I answered that letter on July 13th inst., I was entirely ignorant of the vital facts of which you then had full knowledge. When you wrote me, as above stated, you did not inform me that the contestants Root and his associates, whom you represented, and who had hitherto been the leading contestants, had agreed with proponents that the case should not be tried on the day for which it was set for trial. That they had in fact entered into an agreement with the proponents, by which Mr. Root and his associates were to no longer contest the will. If you had told me this I would then have prepared myself accordingly to protect the interests of my own and your clients. This information you withheld from me in your letter; in fact, you gave as a reason for withdrawal that Mrs. Sheffield and her brother had entered into an agreement with Irwin Davis. When I answered that letter on July 13th I was then in utter ignorance of what was being done by you as attorney for Mr. Root and his associates in making a settlement with the proponents. Neither Mrs. Sheffield, nor her brother, have ever made an agreement which in the slightest degree changes their position as consistent contestants of the forged will. I can now see that when you state in your letter that the interests of Mr. Root and those united with him were antagonistic to those of Mrs. Sheffield and her brother, that it was brought about by Mr. Root and his associates no longer remaining contestants, but becoming, without any knowledge to us, allies with proponents. It was the right of your and my clients to know from you, as their attorney, that the other contestants whom you represented had practically withdrawn their objections to the probate of the will, and that when the case was to be called on the 24th inst., and not on the 26th as you wrote me, that my clients would be compelled to go to trial forthwith and unaided, and, more than

this, that you would aid the proponents in forcing them to trial under such unjust conditions and under such serious disadvantages.    I write you this, not for the purpose of complaining, but to give you a formal and direct notice that I will, in justice to my clients, hold you responsible to them for any adverse results which your action may involve; that I will make your withholding of the facts above referred to and your treatment of them the basis of a motion or action in your courts, unless immediate steps are taken by you to restore my clients to the position which they occupied before your withdrawal, if then they had been in full possession of the facts which you then withheld.    My letter to you of July 13th was written in utter ignorance of the proceedings to which you were then a party, and I now notify you that I shall hold you to your obligations to protect Mrs. Sheffield and her brother, Henry Davis, under your contract, and will not release you therefrom until such time as you have relieved them from the legal disadvantages which your action has placed them under, and restoring them to a position in which they will be free to contest the will of Andrew J. Davis in the Montana courts before a jury.          Very truly yours,

"'MARTIN J. KEOGH.'

"Immediately upon the receipt of said letter Mr. Toole dictated and mailed to Keogh a letter rebuking Keogh for not informing him of the sale by these appellants to Erwin Davis, and positively denying any knowledge of any probable continuance of the Root-Cummings contest until a very few days before the case was set for trial, and any knowledge at all of any negotiation between Root and proponents whereby the will should be probated.

"Affiant further says that there was no agreement consummated, to his knowledge, by which the interests of the said Root and Cummings became adverse to the interests of the said Sheffield and Davis, and nor was he under any legal or moral obligations to disclose any facts coming to him professionally in that behalf.    Nor could he with propriety go further than notify said Keogh of his withdrawal, which affiant did at the very earliest moment that he was apprised that the

said interests would probably become adverse. Affiant further says that he does not now know whether any such agreement has been consummated or perfected, and states that he wrote said letter as soon as he had reasonable cause to believe that any such agreement might be made. Affiant further says that on or about the 15th day of August, 1893, he received the following letter from said Keogh:

"'Martin J. Keogh,

"'Temple Court.

"'New York, August 10, 1893.

"My Dear Mr. Toole: I have not the slightest doubt but that you were led to believe by others that our relations with Erwin Davis were such as precluded you from acting for us. I very much regret that any such misunderstanding should have arisen, because, of all members of the Montana bar whom I met while in Butte, you were the one who impressed me as having the highest sense of professional rectitude, and with whom personal relations could always be agreeable. We were always ready, as Mr. Snyder informed you when in Butte, to contribute our share to the expenses to the litigation, but I will not write you in relation to the matter, as Mr. Snyder expects to have the pleasure of calling upon you in a few days. I am, very truly yours,

"'Martin J. Keogh.'"

Then follow certain letters between Mr. Cotter and Mr. Toole, not important to be set forth.

"That the foregoing constitutes the entire correspondence had by this affiant in reference to his withdrawal from said case, to the best of his knowledge and belief. Affiant further says that he is not at present sufficiently informed as to the correctness of the records of this court referred to in the affidavit of the said Keogh and Snyder to testify in reference thereto, but in so far as any neglect on the part of affiant in not taking or asking that the default of said proponents in not answering the objections in writing to the probate of said will filed by said Sheffield and Davis is concerned, the same is not true, but, on the contrary thereof, affiant did not consider it good policy to do so, and so informed said Snyder; that, in the opinion of affiant, it would have been imprudent to have com-

pelled the proponents to make up the issues upon the contest of said Sheffield and Davis, for the following reasons:

"First. Because there was no agreement by which the Root and Cummings contest and Sheffield and Davis contest were to be tried together. And, as affiant understood the ruling of the court, the same would not be done except by the mutual consent of the parties.

"Second. Because the said contest of Sheffield and Davis might be called and pressed for trial before the Root and Cummings contest, when they were not in condition to do so, and be thereby subjected to a judgment, which would be an estoppel as to them.

"Third. Because the said Root and Cummings might at any time agree to a continuance of their contest, and leave the Sheffield and Davis contest with issues made and no good grounds for a continuance.

"Fourth. Because, as long as said contestants held the said proponents in default, there was no such danger to be encountered; that affiant had no confidence in obtaining a decree on account of such default, but, on the contrary, under the practice of our courts, if such default was asked, it would lead to making up the issues, and subject the contest of said Sheffield and Davis to the uncertainty and embarrassments aforesaid. And so long as this said affiant was in a situation to rely upon the contest of said Root and Cummings, believing said Sheffield and Davis not to be financially able to make the proper defense, ordinary prudence dictated the course pursued, and prompted this affiant in giving said Keogh timely notice of his withdrawal from said contest as attorney for said Sheffield and Davis. Affiant further says that no notice of the substitution of the administrator of the said John A. Davis, deceased, in his place was given affiant, to the best of his knowledge, and that he knows of no way by which the same could have been presented, or the exercise of such legal right by said administrator, as the said John A. Davis, deceased, might have exercised, been avoided by said Sheffield and Davis, or any other contestants, and that an application to the court to fix the time for answering, under the practice in this state, would have led to making up the issues, and endangered the interests

of said contestants, as hereinbefore set forth.   Affiant further
says that he could not, in his opinion, obtain a judgment or
decree declaring said will void as set forth in the affidavit of
said Keogh and Snyder, but that, in the event an effort had
been made to do so, the court would have fixed a time for
answering upon ruling on the demurrer, in accordance with the
practice in the state of Montana, and that, in the opinion of
affiant, if said Keogh and Snyder were misled thereby and
supposed said case was at issue, they should have expected a
trial and notified affiant thereof.   That affiant was at no time
in a condition to urge the default of said John A. Davis, de-
ceased, after his said decease, had there been any such default,
but, on the contrary thereof, had affiant attempted to do so,
the court would have required his administrator to be brought
in before making any order in the premises.   Affiant says
that Keogh and Snyder well knew that the sale of their inter-
ests and the interests of said contestants to said Irwin Davis
released affiant from any obligation to look after the interests of
said contestants, which were known to them on the date it was
made, and was not known to affiant for a year or more after.
Affiant further says that there never was any secret agreement
made by which any right or interest of said Sheffield and
Davis were to be injuriously affected, to the knowledge of affi-
ant, during his relation as attorney for them, nor would he
have consented thereto under any circumstances during such
relation, but that, on the contrary, affiant always informed said
Root, who acted for himself and said Cummings, that imme-
diately upon ascertaining that any conflict between their inter-
ests and those of Sheffield and Davis occurred, or would in all
reason occur, affiant would notify said Keogh of his withdrawal
from said cause, which affiant did, as will appear from letters
made a part hereof.

  "Affiant further says that there never was any agreement
or understanding, to his knowledge, that the issues in the said
Sheffield and Davis contest would be taken up and disposed of
at the time of the trial of the Root and Cummings contest, but,
on the contrary thereof, it was announced on the trial of the
last-named cause that no such agreement existed, and none was
thereafter made, to the knowledge of affiant, and that affiant

says he did not know nor does know that said Keogh had been so informed by Messrs. Corbett & Wellcome or any one else; that no secret agreement was ever entered into severing such contests, or any other agreement in any way affecting the contests of said Sheffield and Davis, and that the only agreement in reference thereto, to the knowledge of affiant, was that of July 24, 1893, which was openly done in this court, and was not under the control of affiant, but purely a matter of discretion of said Root and Cummings according to the ruling of this court heretofore made upon the trial heretofore had, and of which said Keogh and Snyder were fully apprised, and further affiant says not, save and except that, during the entire existence of the relation of attorney and client between affiant and said Sheffield and Davis and Keogh and Snyder, he acted in the utmost good faith and for their interests to the best of his skill and ability.

[SIGNED]   "Edwin W. Toole."

The affidavit of Mr. John B. Clayberg was also filed and is as follows:

"That he has read the affidavits of Martin J. Keogh and William L. Snyder filed in the above matter; that he is one of the firm of McConnell, Clayberg & Gunn, and is now, and has been since the presentation for probate of the alleged will of Andrew J. Davis, above mentioned, one of the attorneys for contestants Henry A. Root and Maria Cummings, as named in the before mentioned affidavits. That in the fall of 1891, at and during the trial of the contests above mentioned, said Snyder was in the city of Butte, and affiant and said Snyder and E. W. Toole, mentioned in said affidavits, had several conversations concerning the employment of said Toole and affiant to look after the interests of said Sheffield and Davis. That most of the negotiations were had between said Toole and said Snyder, but it was distinctly understood and agreed between said Toole and Snyder and this affiant that the said Toole or affiant should not undertake employment from said Snyder in behalf of the interests of said Sheffield and Davis without the consent of the said Root; that both Toole and affiant had been first employed by said Root, and that in no event would either Toole or affiant undertake any employment, or continue the

same if undertaken, when it should appear that such employment would not be for the benefit of the interests of the said Root and Cummings, or if the same should in any way or manner be antagonistic to the interests of the said Root and Cummings; and that in case such employment was undertaken the same should cease, and said Toole and affiant be released therefrom, whenever said Root or Cummings objected to its continuance.

"That it was generally understood between said Snyder, Toole, and affiant that Irwin Davis, a brother of the deceased, was assisting in the attempt to propound the alleged will of said deceased, to which said Root and Cummings had filed contests, the trial of which was then pending; that said Irwin Davis had employed an attorney to assist in the propounding of said will, and had furnished, or agreed to furnish, money to prosecute such action; that soon after the death of said deceased said Root and Irwin Davis had disagreed as to the manner of closing said estate, and, upon the application of John A. Davis for letters of administration on said estate, as disclosed by the affidavit of said Snyder, said Irwin Davis assisted said John A. Davis in said application, and contested the right of said Root to such administration. That these facts were all well known to said Snyder.

"That it was with a full understanding of all these facts that said Snyder entered into the agreement with said Toole (copy of which will be attached to the affidavit of said Toole), and said contract with said Toole was made in view of the above-mentioned facts and conditions.

"Affiant was made a party to the said contract, but it was understood and agreed that affiant was to assist said Toole if and when necessary.

"That in the spring of 1893 affiant called upon said Keogh at his office in the city of New York, for the purpose of consulting with him concerning the interests of said Sheffield and Davis. That said Keogh at that time and place informed affiant that said Sheffield and Davis had sold all their interests in the estate of said A. J. Davis, deceased, to Irwin Davis; that said sale had taken place nearly a year prior thereto, and that he, said Keogh, had nothing further to do with the matter;

that affiant then informed said Keogh that he (affiant) could not further represent said interests, they having passed into the hands of Irwin Davis.

"That on affiant's return to Montana he informed said Toole of said conversation.

"That said Root, immediately upon learning of said sale by said Sheffield and Davis to said Irwin Davis, demanded that said Toole and affiant should withdraw said arrangements with said Snyder and represent the interests of Sheffield and Davis no further.

"That neither said Keogh nor Snyder nor Sheffield nor Davis ever notified or informed either said Toole or affiant of said sale to said Davis until nearly one (1) year after same had been made.

"That said Toole wrote the letter of June 16, 1893, as set forth in said affidavits, and sent the same to affiant for affiant's signature. That said Toole had left the day fixed by the court for the trial of contest of said Sheffield and Davis blank, requesting the affiant to supply said date. That affiant inserted said day as twenty-sixth (26th) instead of twenty-fourth (24th) day of July, 1893, through mistake, believing at the time that it was the correct date.

"That the contests of said Root and Cummings were tried together in the year 1891, by consent of all the parties to said contests, and that the court who tried said contests required such consent to be duly given and entered before ordering the contests tried together.

"That there were no secret agreements between proponent and contestants Root and Cummings, whereby said contests of said Root and Cummings should be tried separate and apart from any other contests, but the agreement to that effect was open and filed in the court wherein said contests were entered.

[SIGNED]   "John B. Clayberg."

Henry A. Root, a contestant, also filed the following affidavit:

That he is the Henry A. Root mentioned in the affidavit of Snyder and Keogh on file in this matter, and one of the contestants against the probate of the alleged will of Andrew J. Davis, deceased.

"That the contests of this affiant and Maria Cummings are identical with reference to the issues raised, and that both of the said contests are under the management and control of this affiant.

"That soon after the death of Andrew J. Davis, deceased, a meeting of the heirs of said deceased was held in the city of Springfield, state of Massachusetts, at which meeting there were present nearly all of the said heirs.

"That Erwin Davis desired at that time to obtain full control over the settlement of the estate of said deceased, and endeavored to induce all of the other heirs present to allow and give to him full power and authority to take such steps as, in his judgment, he might deem best to fully close and distribute said estate.

"That said Erwin Davis made many false and fraudulent statements at said meeting, and that affiant refused to give such authority to said Erwin Davis, or agree in any manner that he, said Erwin Davis, should represent affiant in said estate.

"That other heirs of said deceased refused to allow said Erwin Davis to represent them, but gave power and authority to this affiant to act as their representative in that behalf.

"That, at said meeting bitter feelings were engendered between this affiant and said Erwin Davis, which have continued to the present day, and that said Erwin Davis has, in every way and manner possible, acted contrary to the interests to this affiant and those whom he represents, and has done every thing in his power to defeat the rights of affiant and those whom he represents, and impair or destroy their interests in said estate.

"That, soon after the death of said A. J. Davis, John A. Davis made application for letters of administration upon said estate, and that said Erwin Davis immediately joined with said John A. Davis to procure for said John A. full administration and control of said estate. That this affiant, in his own behalf and behalf of the interests of other heirs represented by him, filed objections to the application of said John A. Davis for letters of administration, and made application

for such administration in his own name, to which said John A. Davis filed objections.

"That said Erwin Davis aided and assisted said John A. Davis in every way and manner possible in the prosecution of his application for administration and objections filed by him to the application of this affiant.

"That such aid and assistance on the part of Erwin Davis continued up to and until the filing of said alleged will for probate; that said Erwin Davis aided and assisted said John A. Davis in the presentation of said will for probate and the litigation growing out of such presentation; that he hired attorneys, who were present and assisted said John A. Davis in the trial of this affiant's contest, and affiant is informed and verily believes that said Erwin Davis agreed to and did furnish money to aid and assist said John A. Davis in the probate of said alleged will, and in defending the same against the contest of this affiant and of said Maria Cummings.

"That the actions of said Erwin Davis have universally been adverse to the interests of this affiant and to those represented by him, and affiant verily believes that said Erwin Davis has in the past, and will in the future, do every thing in his power to prevent affiant and those whom he represents from obtaining any part or portion of the estate of said deceased.

"That affiant, soon after the meeting of the heirs at Springfield, Massachusetts, sent a messenger to see the said Sheffield and Davis concerning their interests in said estate, who endeavored to persuade them to join with affiant and those whom he represents to protect their interests, and prevent said Erwin Davis and John A. Davis from obtaining the entire estate, and who endeavored to induce them to join with affiant and those whom he represents in contesting the said alleged will of Andrew J. Davis, representing to them that the said contest would be very expensive, and that it would be better for all parties in interest to divide the expense among as many as possible, so that the same would be less burdensome.

"That affiant says neither said Sheffield nor said Davis would consent to join this affiant and his people in endeavoring to protect their interests in said estate and prevent the

probate of said will and the entire destruction of their interests in said estate, and refused to render this affiant and his people any aid of any kind, character, or description, but filed their own separate contests.

"That said Sheffield and Davis and their attorneys well knew, from a time shortly after the death of said deceased, that the interests and actions of said Erwin Davis were adverse to the interests of affiant and his people, and that said Erwin Davis was endeavoring to cheat and defraud affiant and his people out of all their interests in said estate.

"Affiant says he was present at the trial of said contest, in the year 1891, at the city of Butte, that he was advised by his attorneys that the said Snyder desired his attorneys, Toole and Clayberg, to look after the interests of said Sheffield and Davis in said estate; that affiant at first objected to any such arrangement being made, but at last consented that his said attorneys might represent the interests of said Sheffield and Davis in so far as said interests did not conflict with himself and his people, but that said employment should go no further than to this extent, and that if, at any time, he should demand the same, his attorneys should withdraw from any agreement to represent said Sheffield and Davis.

"That the files and records in this court in said estate disclose that the contests of this affiant and Maria Cummings do not raise all of the same issues that are raised by the contests of said Sheffield and Davis, and that it would be impossible to try such contests together.

"That affiant verily believes that said Sheffield and Davis and their attorneys never intended to try their contests so filed, but hoped and expected that affiant and Maria Cummings should try their contests, and, if the same resulted in the refusal of the probate of said will, that they would receive the benefit of said contests without the expense of preparation and trial thereof, and that they refused to aid and assist affiant and said Maria Cummings in the preparation and trial of said contests, but compelled affiant and Maria Cummings to bear the entire burden of preparation and trial of said contests amounting to said ———— thousand ($————) dollars.

"The affiant again requested said Snyder, as representing said

Sheffield and Davis, to join affiant and Maria Cummings in their contests at the time of said trial, which said Snyder refused to do.

"That immediately after affiant was informed that said Sheffield and Davis had sold their interests in said estate to said Erwin Davis, affiant demanded of said Toole and Clayberg that they should withdraw from further representing the interests of said Sheffield and Davis.

[SIGNED]    "HENRY A. ROOT."

To rebut the affidavits of the proponent, the contestants read an affidavit of one ———— Logan, who testified in substance:

"That he was the attorney of Irwin Davis, and that the instrument agreeing to sell the interests of the said Sheffield and Davis in the estate of the late Andrew J. Davis, deceased, mentioned and set forth in the affidavit of E. W. Toole, read upon said hearing in opposition to said motion, had been duly rescinded by the parties thereto."

The motion to open the default was taken under advisement by the court, and, upon December 9, 1893, said motion was overruled and denied.

The contestants Sheffield and Davis now appeal to this court from the judgment and order, made by the district court on July 27, 1893, dismissing their objections to the probate of the will, and from the order of the district court, made on the 9th of December, 1883, denying the motion to set aside the judgment and order dismissing their objections to the probate of the said will.

*George F. Sheldon,* and *Cullen & Toole,* for Appellants.

The order dismissing the contest was void. The contestants had, three days prior to the calling of their contest for trial, duly requested, in writing, that a jury be impaneled to determine the issues raised by their contest, in accordance with the provisions of the statute. (Comp. Stats., § 20, p. 280.) The provision of this statute, that when a jury is thus demanded that such objections "must . . . . be tried by a jury," is mandatory, and it was therefore error in the court to dismiss the case on motion of proponent. Mandatory statutes are imperative, and their provisions are to be strictly pursued; otherwise a pro-

ceeding taken contrary to their provision is void. (Sutherland on Statutory Construction, § 454; Endlich on Interpretation of Statutes, § 435.) Actions to prove wills are not governed by the rules of practice applicable to ordinary civil actions. (*Williams* v. *Robinson*, 42 Vt. 658; *St. Leger's Appeal*, 34 Conn. 434; 91 Am. Dec. 737.) The trial by jury of this class of cases has always been studiously guarded. (Proffatt on Jury Trials, § 90; 2 Daniell's Chancery Practice, 1287; *Barney* v. *Hayes*, 11 Mont. 107; *Estate of Sanderson*, 74 Cal. 208; *Walker* v. *Walker*, 14 Ohio St. 157; 82 Am. Dec. 674; *Cockrill* v. *Cox*, 65 Tex. 673; *Davis* v. *Davis*, 34 Tex. 22.) The provisions of the statute, in cases of this kind, makes the jury practically a special tribunal for the determination of these issues, and its jurisdiction is exclusive of all others and conclusive when acting within the scope of its authority. (*Johnson* v. *Towsley*, 13 Wall. 72; *Shepeley* v. *Cowan*, 91 U. S. 330; *Moore* v. *Robbins*, 96 U. S. 535.) When a court exceeds its jurisdiction, its judgment is not voidable only, but is absolutely void. (*Creighton* v. *Hershfield*, 1 Mont. 639.) Our motion prays relief from the judgment under the provisions of section 116 of the Code of Civil Procedure. Whatever may be in furtherance of justice this section of the code permits to be done, and its provisions should be interpreted and applied in the same broad and liberal spirit in which they are conceived. It is impossible to lay down any precise rule on the subject, but the following decisions of this court will show when relief may be granted and when refused: *Benedict* v. *Spendiff*, 9 Mont. 85; *Brown* v. *Mining Co.*, 1 Mont. 57; *Lamb* v. *Mining Co.*, 1 Mont. 64; *Loeb* v. *Schmith*, 1 Mont. 87; *Foster* v. *Hauswirth*, 5 Mont. 566; *Donnelly* v. *Clark*, 6 Mont. 136; *Lowell* v. *Ames*, 6 Mont. 187; *Whiteside* v. *Logan*, 7 Mont. 373; *Briscoe* v. *McCaffery*, 8 Mont. 336; *Heardt* v. *McAllister*, 9 Mont. 405; *Jensen* v. *Barbour*, 12 Mont. 573. (See, also, *Pearson* v. *Fishing Co.*, 99 Cal. 425; *Vermont Marble Co.* v. *Black*, 38 Pac. Rep. 512.) The court is clothed with a very large discretion in reference to this relief; nevertheless, it is a legal discretion, to be wisely and beneficently exercised, so as to promote the ends of justice. (*Jensen* v. *Barbour*, *supra*; Freeman on Judgments, § 106.) When a

doubt exists in the judicial mind it should be resolved in favor of granting the motion and setting aside the default. (1 Black on Judgments, § 354; *Watson* v. *Railroad Co.*, 41 Cal. 17; *Buel* v. *Emrich*, 85 Cal. 116; *Whiteside* v. *Logan, supra; Fisher* v. *O'Donnell*, 153 Pa. St. 619; *Appeal of Jenkintown Nat. Bank*, 124 Pa. St. 337; *Klopfer* v. *Ekis*, 155 Pa. St. 41; *Cadd* v. *Stevenson*, 112 N. Y. 326.) If there was nothing else in this case to excuse these appellants except the want of a revivor it ought to be sufficient to entitle them to the relief they ask. Section 22 of the Code of Civil Procedure provides that a cause of action or defense shall not abate by the death, marriage, or other disability of a party, but that "the courts shall, on motion, allow the action or proceeding to be continued by or against his representatives or successors in interest." This is the revivor which has always been necessary under all systems of practice. (3 Blackstone's Commentaries, 448; *Kennedy* v. *Georgia State Bank*, 8 How. 610; *Jarvis* v. *Filch*, 14 Abb. Pr. 46; *Grove* v. *Grove*, 18 S. W. Rep. 456.) The proponent was in default in failing to file an answer to the objections of these appellants, which were not demurred to from the nineteenth day of August, 1890, up to the eighth day of May, 1893. (*Bowers* v. *Dickerson*, 18 Cal. 420; *Luke* v. *Johnycake*, 9 Kan. 511; *Hopkins* v. *Cothran*, 17 Kan. 175; *Neitzel* v. *Hunter*, 19 Kan. 222; *Jeffs* v. *Fleckmyer*, 14 Kan. 209.) It would not be an abuse of discretion to set aside this judgment on the ground alone of misleading statements made by counsel, were there nothing else in the case. (*Santa Barbara etc. Co.* v. *Thompson*, 46 Cal. 63; *Heineman* v. *Le Clair*, 82 Wis. 135.) The want of sufficient preparation by counsel for these contestants ought to have been accepted as a good ground of continuance, and ought to be a sufficient reason why the prayer of this motion should be granted, when all of the other circumstances surrounding the case are taken into consideration. (3 Estee's Pleading and Practice, § 4621; *People* v. *Logan*, 4 Cal. 189; *State* v. *Lewis*, 74 Mo. 222.) Stipulations entered into by counsel operated as a complete surprise to these appellants, and that is sufficient to entitle them to the relief they now pray for. (*Heineman* v. *Le Clair, supra; Whitcomb* v. *Gandy*, 37 Fed. Rep. 735.) Statutory

construction and application of the maxim, "*Expressio unius est exclusio alterius*": *Smith* v. *Eureka Mills Co.*, 6 Cal. 7; *People* v. *Whitman*, 10 Cal. 38; *Haynes* v. *Meeks*, 10 Cal. 110; *O'Grady* v. *Bushnell*, 23 Cal. 293; *Perry* v. *Ames*, 26 Cal. 372; *People* v. *Hastings*, 29 Cal. 449; *Gregory* v. *State*, 94 Ind. 348; 48 Am. Rep. 162; *Marbury* v. *Madison*, 1 Cranch, 107; *Ex parte Bollman* v. *Swarthout*, 4 Cranch, 75; *Osborne* v. *Bank*, 9 Wheat. 738; *People* v. *Maynard*, 4 Ill. 420; *McCullough* v. *Maryland*, 4 Wheat. 316; *Page* v. *Heineberg*, 40 Vt. 81; 94 Am. Dec. 378.

*W. W. Dixon, Forbis & Forbis, Henry N. Blake,* and *M. Kirkpatrick,* for Respondent.

Even if the appellants' position, that the court was obliged to call a jury, was correct, the failure to do so does not raise a question of jurisdiction. Jurisdiction is the power to hear and determine, and, when the court has that power, any other irregularities in the proceedings are merely errors. (*United States* v. *Arredondo*, 6 Pet. 709; *Central Pac. R. R. Co.* v. *Placer County*, 43 Cal. 365.) The cases of *Barney* v. *Hayes, supra,* and *Estate of Sanderson, supra,* cited by appellants, do not hold that the failure to call a jury to determine the issues deprived the court of jurisdiction, but only that it was error. And respondent claims that the point made by appellants, as to the imperative necessity of having the issues upon the contest of a will tried by a jury, is not well founded in law or applicable to the state of facts shown by the record in the case at bar. That failure to appear is a waiver of a jury trial, (see *Zane* v. *Crowe*, 4 Cal. 112; *Waltham* v. *Carson*, 10 Cal. 180; *Doll* v. *Feller*, 16 Cal. 433; *Gillespie* v. *Benson*, 18 Cal. 411. As regards surprise and excusable neglect, it is to be observed that the resident counsel, of course, had notice of every step taken in the case and of all orders made by the court. They made no objection to the filing of proponent's answer to the objections of Sheffield and Davis; they made no motion to strike it from the files; they consented and concurred in setting the case for trial, and Mr. Cotter demanded a jury trial, and himself moved that said contest of Sheffield and Davis be dismissed. After all that, it is too late to insist upon merely tech-

nical defects in the previous proceedings, if any such existed. (Hayne on New Trial and Appeal, § 27; *Wright* v. *Fire Ins. Co.*, 12 Mont. 478.) It is assumed that proponent was in default in not having sooner filed an answer, and that his default could and should have been entered. It is sufficient to say in reply that no default was ever in fact entered. It is not the expiration of the time allowed for answer, but the entry of the default, which cuts off the right to answer. (*Bowers* v. *Dickerson*, 18 Cal. 420; *Acock* v. *Halsey*, 90 Cal. 215; 2 Estee's Pleading and Practice, § 3168.) Moreover, the Probate Act prescribes no time within which an answer must be filed, and the court made no order fixing a time, and we maintain that until the expiration of a time to be limited by the order of the court, the proponent was not in default and no default could have been entered against him. We submit as a matter of law the contest never abated by the death of John A. Davis. No revivor was therefore necessary. In case of the death of a party it is only necessary to suggest the death upon the record, and thereupon the court, by an *ex parte* order, made without notice, directs that the action be continued in the name of the representative or successor in interest of the deceased. (*Kittle* v. *Belgrade*, 86 Cal. 556; *Taylor* v. *Western Pac. R. R. Co.*, 45 Cal. 323; *Campbell* v. *West*, 93 Cal. 653; Code Civ. Proc., § 22.) Moreover, the failure of counsel of contestants to object to the answer, and their concurrence in the setting of the case for trial and their demand for a jury, amounts to a waiver of any objection of this kind. Many decisions of courts have been made on the subject of surprise and excusable neglect. But we are confident that no well-considered case can be found which will excuse negligence and misconduct so gross as in this case. (See *Ettezworth* v. *Ryan*, 91 Cal. 586; *Coleman* v. *Rankin*, 37 Cal. 247; *Lowell* v. *Ames*, 6 Mont. 188; *Elliott* v. *Show*, 16 Cal. 378; *Thomas* v. *Chambers*, 14 Mont. 423.) This court follows the uniform rule that the question in the case at bar is whether the court below abused its discretion in refusing to set aside the judgment. (*Jensen* v. *Barbour, supra;* Hayne on New Trial and Appeal, § 347.) No sufficient affidavit of merit appears in the record. (Hayne on New Trial and Appeal, § 346.)

HUNT, J.—The ultimate question for review is whether the district court erred in refusing to set aside the appellants' motion to vacate a judgment by default rendered against them dismissing their objections to the probate of the will of A. J. Davis, deceased. To decide this point it is proper to pass upon the following other and incidental questions raised:

1. Did the court err in refusing to grant appellants' motion for a continuance?

2. Were the appellants guilty of neglect in not being ready for trial upon the date set?

The employment of Mr. E. W. Toole and Mr. Clayberg by contestants as their counsel in Montana is ample evidence of the appellants' belief in the invalidity of the will offered for probate by the proponent, and of their disposition to partake of any share of the estate which would be theirs as heirs at law of the decedent, if such contest should result in a decree refusing to admit the will to probate.

The reports of the courts of the state and territory of Montana bear witness to the learning and high standing of the gentleman named; and the appellants had a right to feel assured of every protection under such eminent professional care.

We therefore dismiss any suggestion by respondents of negligent conduct on the part of the appellants themselves, or their New York counsel, on account of their full reliance in Mr. Toole and Mr. Clayberg, at all times prior to the withdrawal of those gentlemen in April and June preceding the date of the trial at Butte; and, for like reasons, we ignore any intimations now made by the appellants of lack of proper regard for their interests by their said counsel at any stage of the proceedings when the gentlemen named acted for them. The several contestants had the same attorneys in Montana; their objections to the will raised substantially the same issues in the separate contests; they stood in the same degree of relationship to the decedent, and. with a cause necessarily common to each and all, it was the most convenient and natural course for their counsel in Montana to pursue, to force one suit to issue and concentrate all energies on one contest, permitting all others to abide the result of the one selected for trial.

Guided apparently by these considerations, the particular

contest of appellants was kept in *statu quo,* or practically so, while that of Root and Cummings was pressed to trial. Appellants were poor, and perhaps the financial abilities of Root enabled him to better prepare the evidence. But however that may have been, the conspicuous fact remains that the Root contest was the first one ever brought to trial. It lasted many weeks, was bitterly contested, and, by its unusual importance, has contributed not a little to the history of will contests in the jurisprudence of the land. But the jury disagreed and a mistrial was had. The several contests still pended, Root's standing ready for hearing.

The stipulation of April 29, 1893, to try it again in July, and not to continue it beyond that time, unless for causes arising after date of the stipulation, warranted the general belief by all interested that Root would again try to establish that the will was a forgery, or had been revoked by other wills. And, in the absence of any express notification by their Montana counsel, that any other course would be pursued, appellants are not now to be blamed for having expected their suit to lie dormant until forever finally killed or reanimated by the determination of the Root-Cummings contest.

But in June, 1893, affairs changed somewhat.

Mr. Toole and Mr. Clayberg then withdrew as counsel for these two contestants, giving as a reason therefor, that appellants had sold out their interests in the estate of decedent to one Erwin Davis, another relative, who was unfriendly to Mr. Root. The professional allegiance of counsel named was expressly due to Root if his interests conflicted with these or other contestants. Mr. Toole's letters to Mr. Keogh were direct and plain withdrawals as counsel, based upon the positive assumption of the fact as true that these appellants had sold their interests to Erwin Davis. And it must be said that these same letters of Mr. Toole advised Mr. Keogh of the necessity of having some one on hand at the trial, which was set for July 24th (or 26th as Mr. Toole, by mistake, put it). But the most important fact must not be lost sight of, that there was not the slightest intimation given in the Toole letters, or in any other way, at any time, to appellants, that the Root-Cummings contests would not be tried upon the 24th of

July, but that appellants' contest would then be called and pushed to judgment, regardless of what course might be taken in the Root matter. Mr. Toole certainly did not then know of any such probable postponement and plan, but, unless he did, it is unreasonable to say that Keogh who relied on Mr. Toole, ought to have been on his guard against such a highly improbable move. True, prudence and cautious regard of his clients' interests ought to have prompted Mr. Keogh to come to Montana at once upon the receipt of notice of Mr. Toole's withdrawal as counsel; but his failure to do so, although a dangerous omission of strict vigilance, cannot be attributed to any gross neglect. What did he do? He sought to hold on to the valued services of Mr. Toole by assuring him that there was no change in the status of his clients toward the will or Root and Cummings by any sale to Erwin Davis. But Mr. Toole refused to act. He next telegraphed to Messrs. Corbett & Wellcome of Butte and asked them to act in appellants' behalf. But they declined. Meanwhile the time was slipping by, and the appellants were without any local counsel. At last Mr. Keogh adopted the unusual course of telegraphing directly to Judge McHatton, the presiding judge of the court in which all the will contests were pending, asking him to recommend an attorney to him. This circumstance of communicating with the judge, after his several futile attempts to secure counsel, is an evidence of the anxiety of Keogh to have his clients represented, and demonstrated that in the "skirminishing" (as respondents characterize the telegraphic efforts to obtain counsel), appellants were determined to secure a reputable attorney to protect their matters. Judge McHatton recommended Mr. Cotter to them. Mr. Cotter was then trying an important mining case before Judge McHatton, but was retained by Keogh on July 17th, just one week before the day set for the Root-Cummings and appellants' contests. It was utterly impossible for Mr. Cotter to familiarize himself with the appellants' claims and the testimony necessary to support them. He was kept in court attending the mining suit until the evening of July 23d, but, under favorable conditions, the time was certainly too brief for any strange counsel to prepare for a contest of such importance, even had he devoted all his

time to doing so from the moment of his employment. His affidavit frankly states that he relied upon the Root contest coming on for trial first. It had been tried first before, it was stipulated for trial again, it preceded the appellants in regular order, and there was absolutely nothing to justify him in the belief that it would be continued.

Upon July 24th, when the hour of trial arrived, however, the stipulation for a continuance of the Root-Cummings case was filed, and the agreement made to separate it "from any other contests of any other parties against the probate of said will." This stipulation summarily disposed of the trial of the main case on that day. Its former dependent, the Sheffield-Davis contest was next called. Mr. Cotter could do nothing except beg a continuance. This he did by affidavit, more fully set forth in the statement of facts. His clients were in Massachusetts and New York, their only Montana counsel familiar with their rights had withdrawn some five weeks before, their New York attorneys were not present, he had no testimony on hand and knew not where to get it or who were his witnesses—indeed, surprised and routed by the unexpected move of the proponent and Root, he suddenly found himself the sole, unaided, unprepared and unadvised counsel for two clients, a nephew and niece of the decedent, nearly three thousand miles away, yet contending for years past that they were justly entitled to an eleventh interest in the princely fortune of their dead uncle.

The court, on July 26th, denied the motion for a postponement. The proponents pressed for a dismissal. Mr. Cotter asked leave to dismiss "without prejudice," believing, probably, that such a dismissal might not operate to bar a reinstatement of the contest of his clients (a point upon which we express no opinion at this time). But the proponents objected to such an order and asked a general dismissal. Thereupon Mr. Cotter, acting presumably in his belief in the best interests of the appellants, withdrew altogether from the case, whereupon it was at once dismissed on proponent's motion.

Thus the contestants were denied a hearing on the merits, and, so far as this contest was concerned, were wholly out of court.

We are not prepared to say that there was error in the

court's refusing the continuance. It may be that, for lack of sufficient knowledge of the facts in the case, the affidavit of Cotter was defective under the statute, and legally insufficient. We may grant, too, without intimating our views upon the effect of the order applied for, that the court properly declined to permit a dismissal "without prejudice," and that the final order of general dismissal was legally granted.

We may go a point further and concede that appellants were to a degree negligent in permitting Mr. Cotter to be placed in the position he was. With such grave interests at stake, and only seven days to consider the rights of his clients, their duty was to have given him assistance by the presence of some one who knew the facts and history of the litigation, lest an unforeseen turn might be taken in their case, which would imperil their rights.

Let the case stand, therefore, as if properly reduced to judgment of dismissal brought about by the insufficiency of the showing in the affidavit for a continuance and by the negligence of the appellants and their New York counsel.

Still we must determine the additional very important point, whether, under all the facts and circumstances presented by the motion and affidavit to open the default, such negligence was excusable, and whether, under section 116 of the Code of Civil Procedure, the contestants are entitled to be relieved of the judgment and default entered against them by the district court.

Several stubborn facts are prominent throughout the record. The appellants are the undisputed heirs at law of the decedent, and, unless cut off by will, are justly entitled to share in his estate. They were prompt in filing a contest as to the validity of the decedent's will. They were diligent in securing the services of counsel in New York. They were diligent in the first instance in retaining counsel in Montana. Their Montana counsel acted for them for years and until less than six weeks before the day set for the trial of their contest. They relied upon their retained counsel until forced to employ another attorney. They knew that Root and Cummings had conducted the principal contest in the former trial, and that it again stood for trial before theirs. They knew that if the

Root case was tried, in the light of past experience, weeks would roll by before theirs could be reached, if it ever was. They knew that Root could only share as an heir at law in the estate of their uncle by overthrowing the will. They knew that Root's contest was set for July 24th. They knew that if the will was good as against Root it should be as against them, while, if the intestacy of their uncle was established by Root, they stood in the same line of succession with him and their other cousins. All these matters were naturally relied upon, and are now important elements in impelling the court to the conclusion to be reached.

But, above all, these appellants did *not* know, and are not blameworthy for not knowing, that Root would stipulate with proponents to continue his contest and expressly keep it distinct from theirs. The entire former conduct of the Root-Cummings contest precluded any reasonable supposition on these contestants' part of any such continuance and stipulation. It was scarcely credible after such a prolonged litigation and an express agreement not to continue a second trial beyond a certain time, and after such a necessarily hostile attitude had been assumed by Root to the proponents of the will, that Root and Cummings would, as late as the very morning of the day of the trial, and without an intimation to these contestants, suddenly adopt so unforeseen a position, and, by doing so, force appellants into the desperate choice of proceeding without testimony or suffering a default.

It may be that such conduct on Root's part, in so far as it affected him only, was a matter purely between him and proponents, but it certainly was none the less a great surprise to these contestants, who were injured by it, and, when considered in the light of the fact that by no possible effort could the appellants have prepared for trial after Mr. Cotter was retained, the situation appeals with much force to the discretion of a court to restore these contestants to a position where they can be heard upon their objections to the probate of the will.

The letter of Mr. Corbett of April, 1892, not only advised Mr. Keogh that under our practice ample time would be given to frame the pleadings in the several contests, but also communicated to Keogh the statements of Mr. Forbis, of counsel

for proponent, made to Mr. Corbett, that "they have no intention of forcing trial on the Sheffield-Davis objections at any earlier date than upon Root and Cummings objections, and Mr. James W. Forbis stated to me that the demurrer being disposed of should stand continued for hearing subject to the same con litions as the Root and Cummings objections." This letter strongly corroborates the evident and the well-justified reliance of these appellants upon the disposition of the Root contest ahead of theirs.

Of course, as events turned out, these contestants were foolish to rely upon all the matters they did, but, unless nearly every reasonable hypothesis in explanation of their conduct, other than a most unnatural indifference, is to be excluded, under the showing made to open the default, it is well nigh impossible to believe that the ends of justice will be furthered by barring them of their day in court. We say "barring them," without meaning to hold that a judgment of dismissal would necessarily preclude a contestant from coming in under section 30 of the Probate Practice Act, and instituting a contest within a year after a will may have been probated. But the possible rights of the appellants under such conditions not being involved herein, and not having been argued to this court, we find it unnecessary to decide the point suggested.

The proponent cannot complain of any injustice to him, because he was a party to the stipulation with Root of July 24th, which operated to the surprise of the contestants. Moreover, the court may prescribe that by reason of the negligence shown, as a condition for relief, contestants—appellants—shall pay the necessary court costs to which proponent was put in preparing for trial on July 24, 1893.

Some stress is laid by respondents upon the alleged sale of contestants' interests to Erwin Davis, and it is argued that because there was such a sale the appellants cannot justly claim surprise or excusable neglect. But as they stand toward the court, rather than as toward one another, we find sufficient excuse for their neglect throughout the whole record to entitle them to the relief asked, without assuming to decide, upon the affidavits before us, whether such sale was or

was not a subsisting agreement when Mr. Toole withdrew as their counsel.

Nor do we attach particular significance to the appellants' failure to pay any share of the contestants' costs in the Root-Cummings matter. The proponents cannot object to that, for it in no way hurt them, unless it otherwise tends to establish inexcusable neglect in not meeting them in the July, 1893, case. This it does not do in a satisfactory manner.

Besides, if appellants have made a sufficient showing of rights, their past penuriousness toward other contestants is not for consideration, and the courts should not deter them from now asserting those rights against those whom they have in no wise injured.

We find it unnecessary to discuss the probability of any alleged collusive agreement between Root and Cummings and proponent to continue their contest, in order to secure the dismissal of others and permit the will to be probated and the Root-Cummings contest to be withdrawn, to the end that the estate might be divided between the legatees named in said will and the said Root and Cummings, to the exclusion of the said Sheffield and Davis. We have eliminated this accusation of appellants from our consideration of the present appeal.

So, too, do we refrain from more than a passing mention of the unwarranted implications of the counsel for appellants in the language of his briefs upon the ruling of the district court, refusing to open the default. The perhaps vital importance of this decision to his clients has doubtless led counsel into a somewhat intemperate use of words, which scarcely comports with his honorable position at the bar of this court.

We base our opinion upon the ground that when these appellants, by their counsel, Mr. Cotter, went into court on July 24, 1893, the Root-Cummings contest stood for trial ahead of theirs, and that when it was continued, and the appellants' contest was peremptorily called, they were surprised and their negligence in not being ready to proceed, and in suffering a default, considering all the facts and circumstances, was excusable.

It follows that the discretion of the court in refusing the relief finally and justly asked was so unwisely exercised that,

in furtherance of justice, a reversal of the case must be ordered.

It is therefore ordered that the cause be remanded to the district court of Silver Bow county, with directions that upon payment within thirty days into that court by the appellants of all reasonable and legally taxable court costs of the respondents in preparing for trial on July 24, 1893, the judgment of the district court, and the order denying the motion to set aside the same, be reversed, and the contest of the appellants be restored for trial or other proper disposition by that court.

*Reversed.*

DE WITT, J., concurs.    PEMBERTON, C. J., dissents.

